UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| **MIDIA LAJEAN WRIGHT,** ) <br> ) <br>       Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> **CAROLYN W. COLVIN,** ) <br> **Acting Commissioner of the Social** ) <br> **Security Administration,** ) <br> ) <br>       Defendant. ) <br>                                 ) | **Case  No. EDCV 12-2012 AJW** <br><br> **MEMORANDUM OF DECISION** |

      Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

      Plaintiff, then aged 46, filed her application for SSI benefits on October 1, 2009, alleging that she became disabled on that same day. [JS 2; Administrative Record ("AR") 99-105]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the "ALJ") found that plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work. [AR 28]. Based on the testimony of a vocational expert, the ALJ found that plaintiff's RFC precluded her from performing her past relevant work as a care provider, but did not preclude her from

1  performing alternative jobs available in significant numbers in the national economy, such as a small
2  products assembler, cleaner/housekeeper, or cafeteria attendant. [AR 30]. Therefore, the ALJ found
3  plaintiff not disabled at any time through the date of her decision. [AR 31].

## Standard of Review

5  The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial
6  evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.
7  2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than
8  a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.
9  2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
10 Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is
11 required to review the record as a whole and to consider evidence detracting from the decision as well as
12 evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);
13 Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than
14 one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."
15 Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Statement of Disputed Issues

17 The disputed issues are whether the ALJ: (1) properly considered the relevant medical evidence of
18 record; and (2) properly considered plaintiff's subjective complaints and assessed her credibility. [JS 3].

## Discussion

### Medical evidence

21 Plaintiff contends that the ALJ erred by failing to properly consider the relevant medical evidence
22 of record. [JS 4-5].
23 The ALJ reviewed plaintiff's treatment records from Arrowhead Regional Medical Center covering
24 the period from June 5, 2009 through March 21, 2011. These were the only treatment reports in the record.
25 [AR 29; see AR 153-182, 190-197, 204-240]. The ALJ discussed plaintiff's diagnosis of diabetes mellitus
26 and her treatment for that condition, which initially involved oral medications that poorly controlled her
27 blood glucose levels. The ALJ noted that plaintiff was later put on insulin, which improved her glycemic
28 control. The ALJ also discussed plaintiff's neuropathic pain in her feet and observed that Neurontin

provided "some benefit." [AR 29]. The ALJ mentioned plaintiff's complaints of blurred vision, which was attributed to a history of right eye trauma during plaintiff's teenage years. Finally, the ALJ remarked that plaintiff's laboratory studies were reactive for hepatitis C, but an October 29, 2009 ultrasound revealed no liver abnormalities. [AR 29].

The ALJ also reviewed the nonexamining state agency medical consultant assessments and said that she gave "great weight" to their assessments. [AR 29]. Based on the medical evidence as a whole, the ALJ found that plaintiff had severe impairments consisting of diabetes mellitus and hepatitis C, but that those impairments did not preclude her from performing the full range of light work. [AR28].

Plaintiff contends that the ALJ's review of the medical evidence "minimized" her hepatitis C infection, but the ALJ found that plaintiff's diabetes and hepatitis C were severe and restricted her no more than light work. Plaintiff does not cite any evidence suggesting that her "severely elevated" viral load or the finding of an enlarged liver [AR 161] warranted any greater restrictions. At least one diagnostic test contradicts plaintiff's assertion. An abdominal ultrasound was conducted in October 2009 in response to "abnormal liver function tests," and the size and condition of plaintiff's liver and other abdominal organs were noted. The reviewing physician concluded that plaintiff's abdominal examination was "unremarkable." [AR 176].

Plaintiff also argues that the ALJ "ignored" her diagnoses of peripheral neuropathy secondary to diabetes and anemia. However, a claimant "must show more than the mere presence of a condition or ailment" to establish a medically determinable severe impairment or combination of impairments. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)); see also Sample v. Schweiker, 694 F.2d 639, 642-643 (9th Cir. 1982) (noting that the existence of a diagnosed disorder "is not per se disabling," and that "there must be proof of the impairment's disabling severity"). Plaintiff has not pointed to any evidence suggesting that her peripheral neuropathy and anemia, singly or in combination, more than minimally restricted her ability to perform basic work activities. See 20 C.F.R. §§ 404.1521 (a), 416.921(a); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

Plaintiff contends that the ALJ impermissibly ignored entries in the treatment reports indicating that she complained of fatigue, numbness and tingling in her extremities, and blurry vision. [JS 4-5]. That contention lacks merit. The ALJ noted plaintiff's complaints of blurry vision. [AR 29]. Plaintiff contends

that her blurry vision is "clearly due to elevated sugar levels associated with her diabetes," but she cites no supporting medical evidence. Plaintiff told her treatment providers that she was stabbed in the eyes with a screwdriver as a child, and she also said that she had blurry vision when she ate meals. Nonetheless, her "visual field" was noted to be "intact." [AR 224-228]. She was referred to an ophthalmologist, who examined her and recommended yearly follow-up. [AR 228]. Plaintiff has not shown that her subjective complaints of blurry vision constitute a medically determinable severe impairment that more than minimally affects her ability to work.

The ALJ did not disregard plaintiff's subjective complaints concerning numbness, tingling, or decreased sensation in her feet. The ALJ commented that plaintiff's treatment reports included complaints of "neuropathic pain in her feet," and that Neurontin provided "some benefit," which is consistent with the few treatment notes that address this problem. [See AR 229 (noting improvement in peripheral neuropathy with Neurontin and increasing the dosage)]. Regarding plaintiff's complaints of fatigue, the ALJ made a general credibility finding, which is discussed below, and she did not err in failing to discuss, or provide a rationale for rejecting, every mention of plaintiff's subjective symptoms in the treatment records. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.' ") (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) and citing Vincent v. Heckler, 739 F.2d 1393, 1394-1395 (9th Cir. 1984)). Further, plaintiff has not pointed to any medical evidence showing that her anemia, fatigue, or any of her other complaints warrant a more restrictive RFC than the ALJ assigned. Accordingly, any error in failing to address them would be harmless. See McLeod v. Astrue, 640 F.3d 881, 886-888 (9th Cir. 2011) (holding that the harmless error rule ordinarily applied in civil cases applies in social security disability cases, and that the burden is on the party attacking the agency's determination to show that prejudice resulted from the error) (citing Shinseki v. Sanders, 556 U.S. 396, 406-409 (2009)).

Plaintiff also contends that the ALJ erred in relying on an April 21, 2010 assessment by nonexamining state agency physician Joseph Hartman, M.D., who concluded that plaintiff retained an RFC to perform work at the light exertional level. [AR 29 (citing AR 198-203)]. Plaintiff argues that Dr. Hartman may not have had the best ability to understand and assess plaintiff's impairments because he is an ophthalmologist. [JS 4]. Defendant submitted a copy of licensing information maintained by the

1 Medical Board of California indicating that, in addition to being board-certified ophthalmology, Dr.
2 Hartman had been a licensed physician and surgeon for almost 41 years at the time he prepared plaintiff's
3 assessment. [See JS, Ex. B.]   Therefore, Dr. Hartman was qualified to render medical opinions regarding
4 plaintiff's impairments and their functional effects, and the ALJ was required to consider his assessment.
5 See 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1) (stating that licensed physicians are acceptable medical
6 sources); 20 C.F.R. §§ 404.1527(a)-(b), 416.927(a)-(b) (stating that every medical opinion from physicians
7 and other acceptable medical sources will be considered); Morgan v. Colvin, 2013 WL 4051573, at *1, *5
8 (D. Ariz. Aug. 12, 2013) (rejecting the argument that a state agency physician's RFC assessment of a
9 claimant with nervous system and back problems was not credible because the physician was an
10 ophthalmologist, and stating that the ALJ was "obligated to consider" that opinion).

11       Plaintiff argues that the ALJ erred in failing to mention a November 30, 2009 RFC assessment by
12 nonexamining state agency physician Martin Yee, M.D., an internist, who limited plaintiff to "at least"
13 sedentary work. [JS 4; see AR 183-187].  Plaintiff appears to suggest that the ALJ was unaware that there
14 were two state agency assessments. [JS 4].  However, as mentioned, the ALJ stated that she considered the
15 state agency "consultants" in reaching her decision. [AR 29 (emphasis added)].  Furthermore, Dr. Hartman
16 explicitly rejected Dr. Yee's opinion that plaintiff was limited to sedentary work on the ground that a
17 restriction to light work was more consistent with the medical evidence as a whole. [AR 203].  In crediting
18 Dr. Hartman's opinion, the ALJ implicitly endorsed his conclusion that Dr. Yee's RFC for "at least"
19 sedentary work understated plaintiff's functional abilities. Given that both Dr. Hartman and Dr. Yee were
20 nonexamining physicians, the ALJ was not obliged to give any deference to Dr. Yee's opinion.  Dr.
21 Hartman's opinion constituted substantial evidence supporting the ALJ's RFC finding because it was
22 consistent with the medical evidence, and there was no treating or examining source opinion in the record
23 to contradict it.  See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (explaining that the opinion
24 of a nonexamining medical expert may constitute substantial evidence when it is consistent with other
25 independent evidence in the record).[1]

26

27     [1]   Defendant correctly contends that even if the ALJ erred in failing to consider Dr. Yee's
assessment, the error would be harmless because Dr. Yee opined that plaintiff could perform
28 sedentary work, which, given plaintiff's age, education, and vocational profile, would lead to a

**Credibility finding**

Plaintiff contends that the ALJ improperly rejected her statements and testimony about her subjective symptoms. [JS 10-13]. Plaintiff contends that she made multiple written statements and rendered testimony under oath, yet the ALJ improperly found her not credible because she did not have a consistent work history. [JS 12].

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885. "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff alleges the ALJ did not properly credit her written statements in her disability report alleging that she is unable to work due to her diabetes, inability to stand for long periods, and shortness of breath. [JS 11 (citing AR 113)]. She also points to her statements that she is able to take care of her personal needs but that she gets tired frequently, and notes her statements that she "[doesn't have] the

---

finding of "not disabled" under the Commissioner's Medical-Vocational Guidelines. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.21; see also McLeod, 640 F.3d at 886-888.

energy I once had" and that her "feet stay numb so I don[']t walk much as if my co[o]rdination is off." [JS 11; AR 126].

Plaintiff characterizes her hearing testimony as follows:

> [S]he was unable to work at a full time job, as a result of her decreased strength, and her daily pain in her legs and hands. Plaintiff reported at that time taking Metformin, N[e]urontin, Hydrocodone, and Aspirin. Plaintiff testified under oath that she has numbness in her hands and feet all of the time and has fallen down numerous times, and that she is limited to standing only 30 minutes at a time. Plaintiff testified that she can walk for up to 30 minutes at a time, and that walking causes shortness of breath. Plaintiff added that she doesn't have any energy and that she takes Humalog and Lantus for her diabetes. Furthermore, Plaintiff testified that her sugar levels can be as high as in the 400-500 range in the mornings.

[JS 12 (citing AR 39-42)].

The ALJ concluded that plaintiff's allegations about her subjective symptoms was not fully credible:

> Although this evidence alone is not conclusive, it is significant to note that the claimant is 47 years old and has never established a consistent record of work and earnings. This raises the question whether the current unemployment is truly the result of an inability to work or lack of motivation to engage in gainful employment. The claimant testified at the hearing that she had stopped working when her children[2] were old enough to attend school. Since then, she has held only sporadic temporary jobs. In general, the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are credible only to the extent they are consistent with the [RFC] assessed above.

[AR 29].

Plaintiff's assertion that the ALJ faulted her for not having a "stellar" work history [JS 13] exaggerates the ALJ's finding. The ALJ did not fault her for a lack of an exemplary work history, but rather

---

[2] The ALJ appears to have mistakenly referred to plaintiff's grandchildren and nieces/nephews as plaintiff's children. [See AR 38 (plaintiff testifies she was doing childcare for her daughter and sisters but stopped because "the kids had got old enough to go to school")].

7

for the lack of any consistent work history during the 23-year period preceding the hearing. Plaintiff reported no earnings during 15 of those 23 years. [AR 107]. During four of those years, she earned less than $900 dollars per year. [AR 107]. Further, beginning in 2005—the year plaintiff stopped working as a childcare provider for her grandchildren, who began attending school— she reported earnings during only two years, $351.77 in 2005 and $1295.38 in 2006. [AR 38-39, 107]. The ALJ could properly rely on plaintiff's exceptionally poor work history to support her negative credibility determination. See Thomas, 278 F.3d at 958-959 (holding that the ALJ permissibly found the claimant not credible in part because she had an "extremely poor work history" and had "shown little propensity to work in her lifetime"); Wyatt v. Colvin, 2013 WL 3233330, at *13 (C.D. Cal. June 25, 2013) (holding that the ALJ properly discounted claimant's credibility based on her poor work history where she had no earnings for over a decade, and in eight of the 12 years she did work, her wages ranged from only a couple hundred dollars to about $8000 a year); Woodsum v. Astrue, 711 F. Supp. 2d 1239, 1262 (W.D. Wash. 2010) (holding that the ALJ properly discounted claimant's credibility based on her "marginal work history").

Although the ALJ did not explicitly say so, it may reasonably be inferred from her decision as a whole that she did not rely solely on plaintiff's poor work history to discredit her subjective complaints, but also on factors she discussed in reviewing the medical evidence and formulating plaintiff's RFC, namely: (1) plaintiff's response to medications she was prescribed, including insulin and Neurontin; (2) the absence of objective medical evidence corroborating the alleged severity of plaintiff's subjective complaints; and (3) the opinions of Dr. Hartman and Dr. Yee, neither of whom concluded that plaintiff was disabled. [See AR 28-29]. See Warre v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001, 1006  (9th Cir. 2005) ("Impairments that can be controlled effectively with medication are not disabling."); Burch, 400 F.3d at 681  ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Light, 119 F.3d at 792 (stating that the ALJ may consider information from physicians regarding the nature and effect of a claimant's symptoms). It would have been preferable for the ALJ to explicitly identify all of the factors she relied on to discredit plaintiff's subjective allegations. Nonetheless, an ALJ is not required to "recite [any] magic words" to justify rejecting evidence, provided the ALJ's grounds for doing so can reasonably be inferred from his or her decision. Magallanes v. Bowen,  881 F.2d 747, 755 (9th Cir. 1989) ("[O]ur cases do require such an

incantation. As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the [ALJ's decision], and draw inferences relevant to [the rejected evidence], if those inferences are there to be drawn."); see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision[.]") (citing Gallant v. Heckler, 753 F.2d 1450, 1452–1453 (9th Cir. 1984); Morgan, 169 F.3d at 599). Accordingly, the ALJ's finding that plaintiff's subjective symptom testimony is not fully credible is supported by substantial evidence in the record and is free from legal error.

**Lay witness testimony**

Plaintiff further contends that the ALJ failed properly to consider, or give reasons for rejecting, the hearing testimony of lay witness Catherine Thompson. [JS 16].

The ALJ must take into account lay witness testimony about a claimant's symptoms but can reject that testimony by providing "reasons that are germane to each witness." Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

Ms. Thompson testified that she is plaintiff's girlfriend and has lived with her "[o]n and off" since 2005. [AR 43]. She described plaintiff's daily insulin intake and some of her daily activities, such as watching TV, spending some time with her grandchildren, and taking small walks. [AR 43-44]. She said that plaintiff sometimes does not like the way insulin makes her feel, but Thompson "makes her" take the medicine. [AR 44]. Thompson also testified that she sometimes prepares food for plaintiff, does the majority of the housework, and goes to the store for plaintiff depending on how her legs feel. [AR 43-44]. Thompson testified that plaintiff complains about her leg pain, and about how she has to take "more [pain medication] than she should because they don't help her like they should." [AR 45]. Finally, Thompson said that plaintiff sometimes got leg cramps in the middle of the night, and that Thompson helped her by rubbing her legs and feet. [AR 45].

Defendant acknowledges that the ALJ did not explicitly address Ms. Thompson's testimony. [JS 16]. Although that omission is legal error, the error was harmless. See McLeod, 640 F.3d at 886-888. Thompson's testimony merely repeated that plaintiff takes insulin for her diabetes, and echoed her

1 subjective complaints about leg pain and functional restrictions. Thompson's testimony was thus
2 cumulative of plaintiff's own subjective testimony, which the ALJ permissibly discounted, and did not
3 undermine the negative inference the ALJ drew from plaintiff's poor work history. See Molina v. Astrue,
4 674 F.3d 1104, 1116-1117 (9th Cir. 2012) (holding that the ALJ's failure to discuss material lay witness
5 testimony is not prejudicial per se, and that "an ALJ's failure to comment upon lay witness testimony is
6 harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also
7 discredits [the lay witness's] claims'") (alterations in original) (quoting Buckner v. Astrue, 646 F.3d 549,
8 560 (8th Cir. 2011)). Plaintiff has not shown a substantial likelihood of prejudice from the ALJ's failure
9 to discuss Ms. Thomson's lay testimony. Accordingly, the ALJ's error was harmless.

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

November 19, 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge